UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

FRANK LOUIS WATSON,

        Plaintiff,                 Case No. 2:11-cv-247

v.                                         Honorable R. Allan Edgar

M. COMFORT, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without immediate payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Frank Louis Watson, a state prisoner currently confined to the Baraga Maximum Correctional Facility (AMF), filed this civil rights action pursuant to 42 U.S.C. § 1983. In his complaint Plaintiff names Defendants Physician Assistant M. Comfort, Supervisor N. Hulkoff, R.N., Supervisor K. Carr, R.N., Supervising Manager G. Hill, R.N., and Dr. B. Canlas. In March of 2003, Plaintiff had a biopsy done on a lymph node in his left neck, which showed "abnormal lymph node with paucity of follicular centers possibly reflecting immunodeficiency state; negative for viral cytopathic changes and neoplasia." (Plaintiff's Exhibit 1.)

According to Plaintiff's complaint, Plaintiff was seen by Defendant Canlas sometime in December of 2010. Plaintiff told Defendant Canlas that he had swollen lymph nodes under his chin which were causing him pain whenever he ate or drank, and that he had previously had a biopsy which showed that he had a possible immunodeficiency disease. Defendant Canlas told Plaintiff that the fact that his lymph nodes kept swelling up did not mean that he had a disease. Defendant Canlas further stated that Plaintiff's lymph nodes could swell up from an allergic reaction and that Plaintiff should not be worrying about having a "blood disease."

Defendant Comfort saw Plaintiff because he was experiencing gagging and pain in his throat on December 30, 2010. During the visit, Defendant Comfort and told Plaintiff that he had some sort of bacterial disease. However, Defendant Comfort did not provide Plaintiff with any treatment, nor did she give him any further information. Plaintiff filed a grievance. Defendant Hulkoff interviewed Plaintiff on the grievance on January 5, 2011, and stated that there was no evidence in his medical file which showed that he had a bacterial infection. Plaintiff asked for some pain medication, but Defendant Hulkoff did not provide him with any such medication.

Plaintiff alleges that on January 28, 2011, he was seen by Defendant Comfort for complaints of gagging and pain in his throat while eating. During the exam, Plaintiff asked Defendant Comfort if he could have another biopsy done on the lymph nodes under his chin. Defendant Comfort denied Plaintiff's request, stating that he had already had a biopsy in the past which showed no indication of infection. On February 24, 2011, Plaintiff kited the facility psychologist and she forwarded the kite to the nursing department. On February 28, 2011, Defendant Comfort examined Plaintiff and stated that he did not need a biopsy, nor did he need any medication. Plaintiff filed a grievance. On March 3, 2011, Plaintiff was placed on a soft mechanical diet, but was denied pain medication. On March 9, 2011, Plaintiff was interviewed on the grievance by Defendant Hulkoff, who stated that it did not make sense for Defendant Comfort to deny Plaintiff's medication and a biopsy, but that she could do nothing for Plaintiff other than talk to her supervisor, Defendant Hill.

On March 20, 2011, Plaintiff submitted a medical kite. On March 24, 2011, Defendant Casper saw Plaintiff and scheduled him to see Defendant Comfort. However, Plaintiff did not see Defendant Comfort until April 8, 2011, after he had filed another kite. Plaintiff asked Defendant Comfort to prescribe him some medication because he was experiencing severe pain in his throat. Defendant Comfort responded by telling Plaintiff that she was not going to prescribe him "Elevil" because she did not believe he was having severe throat pain. However, Defendant Comfort did prescribe Plaintiff some Naprosyn. On May 5, 2011, this medication was changed to Ibuprofen after Plaintiff complained that the Naprosyn was bothering his stomach.

On April 8, 2011, Plaintiff wrote a letter to Defendant Canlas. On April 12, 2011, Plaintiff was seen by Defendant Canlas and complained that Defendant Comfort was not providing

him with adequate medical treatment. Defendant Canlas listened to Plaintiff's symptoms and prescribed him a medication called "Zirtec."

Plaintiff states that Defendants' conduct violated his rights under the First and Eighth Amendments.[1] Plaintiff seeks compensatory and punitive damages, as well as costs.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

---

[1] Plaintiff has filed two supplemental complaints which assert that his right to free speech and his right to be free from retaliation were violated by Defendants (docket #8 and #9).

– that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In this case, Plaintiff's complaint fails to show that prison officials were deliberately indifferent to a serious medical need. Plaintiff was seen on numerous occasions by health care personnel and was prescribed medication for his condition. In addition, Plaintiff was given a special diet to accommodate his condition. Plaintiff merely asserts that Defendants were not aggressive enough in diagnosing and / or treating his condition. However, as noted above, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical

diagnoses or treatment are not enough to state a deliberate indifference claim. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Plaintiff claims that Defendant Comfort denied his request for medication for 60 days after Plaintiff wrote three grievances on Defendant Comfort for inadequate medical treatment. Plaintiff claims that this conduct was retaliatory and violated his rights under the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations

of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

In this case, Plaintiff's assertion that Defendant Comfort retaliated against him is entirely conclusory. Plaintiff fails to allege any specific facts showing that Defendant Comfort's conduct was motivated by a desire to retaliate against him. Rather, Plaintiff alleges that Defendant Comfort told him that she was not going to prescribe him "Elevil" because she did not believe he was having severe throat pain. The fact that Defendant Comfort did not see Plaintiff's medical condition as severe enough to require medications does not support Plaintiff's assertion that he was retaliated against. Plaintiff fails to allege any other facts in support of the asserted First Amendment violations by Defendant Comfort. Therefore, these claims are properly dismissed.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 12/5/2011        /s/ R. Allan Edgar
                        R. Allan Edgar
                        United States District Judge